ANDREW DUPREE
680 Epic Way
San Jose, CA, 95134
Phone:     321-332-4733
Email:     andrewdupree43@yahoo.com

IN PRO PER



FILED
JAN 19 2016
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT
CALIFORNIA NORTHERN DISTRICT

ANDREW DUPREE, an individual,

Plaintiff,

vs.

APPLE, INC;
TIM COOK;BRENDA
EVERSON;SUZANNE PIERRE-
ZILES;

Defendants.

CV Case No. 16  0289  HRL

UNLIMITED JURISDICTION

**COMPLAINT**

- DISCRIMINATION BASED ON RACE IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT (Cal. Civ. Code*51 et seq.)

- DISCRIMINATION BASED ON RACE, COLOR, AND NATIONAL ORIGIN  **(Title VII, 42 USC §2000e et seq. and California Fair Housing and Employment Act, Cal Gov. Code § 12940 et seq, 42 U.S.C SECTION 1981, Civil Rights Act of 1991)**

- RETALIATION

- **RACIAL DISCRIMINATION UNDER COLOR OF STATE LAW(42 U.S.C.*1983)**

- **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

- **FAILURE TO TAKE REASONABLE STEPS TO MAINTAIN AN ENVIRONMENT**

**FREE FROM DISCRIMINATION
BASED ON RACE IN
ACCORDANCE WITH THE FAIR
HOUSING AND EMPLOYMENT
ACT**

**$25 MILLION IN
COMPENSATORY AND
PUNITIVE DAMGES
REQUESTED**

**DEMAND FOR JURY TRIAL
(UNLIMITED CIVIL)**

**COMES NOW,** Plaintiff Andrew Dupree, an African American male (Plaintiff) hereby complains against Apple Inc; Tim Cook; Brenda Everson; Suzanne Pierre-Ziles (Defendant) and on information and belief, allege as follows:

## INTRODUCTION

This action for damages under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e , est seq. (Title VII), and the Civil Rights act of 1991, 42 U.S.C. Section 1981 and 1981(a)for Racial Discrimination. Plaintiff alleges that Defendant, Apple Inc., (hereafter, Apple) has discriminated agains't him, and deliberately and knowingly violated his Federally protected civil rights. Also CEO Tim Cook, Brenda Everson, and Suzanne Pierre-Ziles for failing to take reasonable steps to maintain environment free from discrimination based on race pursuant to Fair Employment and Housing Act. Also Intentional Infliction of Emotional Distress, as well as Racial Discrimination under the Unruh Civil Rights Act (Cal. Civ. Code *51 et seq), Retaliation, Racial Discrimination under color of state law(42 U.S.C. *1983), failure to take

reasonable steps to maintain environment free of discrimination based on race in accordance with the fair housing and employment act.

## THE PARTIES

- Plaintiff Andrew Dupree, is a 33 year old African American male, who has had consistent work experience dating back to 1999. Dupree was lead coordinator for a small construction company before being agent of the month for Liberty National Insurance 6 consecutive months in a row. Dupree then took the knowledge and finance he gained from insurance to found his own insurance leads company. Dupree hired 5 employees who gathered leads for Dupree to further his insurance aspirations. At this time Dupree was dual-licensed both state and federally for life and health insurance selling primarily for Kaiser Permanente. Dupree is also a published poet, and avid reader who's also volunteered with several presidential campaigns and even voted while residing overseas. Dupree also guided his mother to attain her insurance license and they founded his company jointly. Dupree also served on the Executive Board for the Puerto Rican Chamber of Commerce as the sole Executive Benefits Coordinator who's responsible for all current and new members receiving life and health insurance as a welcoming package as part of their membership.(EXH-1) Dupree has also been dual licensed for life and health insurance in numerous states including Florida, California, Colorado, Georgia, Illinois, Hawaii, Virginia, and Oregon.

Defendant Apple Inc is a California Corporation headquartered in Northern California and at all times was licensed to do business and conducted business in California. Defendant Tim Cook was and is CEO of Apple Inc and committed the occurrences, acts and omissions complained of herein while acting and operating as CEO with knowledge of Plaintiff Dupree's ordeal and hasn't terminated or disciplined any retail managers or corporate employees involved in

alleged discrimination. One such individual known as Ashley Yates recently completed a 6 month career experience in Cuppertino after the alleged discrimination she committed  while being named in 2 separate racial discrimination lawsuits. Plaintiff Dupree still hasn't received an adequate explanation for his firing or rehiring at entry level or reduction in pay. Defendant Brenda Everson is a Human Resources attendant for Apple Inc and committed the occurrences, acts and omissions complained of herein while acting and operating for Defendant Apple Inc.  Defendant Suzanne Pierre Zilles is a Human Resources attendant for Apple Inc and committed the occurrences, acts and omissions complained of herein while acting and operating for Defendant Apple Inc.

## JURISDICTION AND VENUE

Defendant Andrew Dupree was a resident of the State of Florida and is  an employee of Defendant Apple Inc. during the initial discrimination and retaliation that took place.  Dupree now resides in Northern California and continues his employment with Defendant Apple where he has filed for racial discrimination against Apple Inc (Defendant) as well as retaliation and numerous other offensives  identical to what Dupree endured while residing in Florida. Dupree is also exercising his right to refile his initial lawsuit since he dismissed the initial lawsuit without prejudice ( EXH-2). More recently, most of the actions taken against Dupree have been in Northern California in the Los Gatos/Cuppertino locations.

- Defendant Apple, having had notice of this action from the inception of filing the EEOC administrative claims, and having headquarters in state of California.
- Jurisdiction is conferred on this Court by 42 USC Section 2000e-5. This action pursuant to U.S.C.  *1983 arises under the first and fourteenth amendments to the United States Constitution and under California state law and title seven of federal

law as alleged herein. This court has jurisdiction, including diversity jurisdiction over this under U.S.C. &&1331

//

//

//

## FACTUAL ALLEGATIONS

- Dupree began working as a Retail Specialist for Apple Inc. ("Apple") on February 15, 2011. He is, at all times material herein, an "employee," as defined by Section 701 of Title VII of the Civil Rights Act of 1964: Equal Employment Opportunity ("EEOC," United States Code §§ 701 *et seq.*)

- During his employment, Dupree performed his job duties for Apple in a competent and efficient manner. He gave undivided attention and loyalty to this company.

- Due to Dupree's exceptional work ethic, he was given the opportunity to transfer to an Apple Retail Store in Australia ("Australia Store") located at 367 George Street, Sydney NSW, Australia. Dupree saw this as an opportunity to train and advance through the company as the Australia Store was a Flagship Store.

- Prior to this transfer Dupree was working out of the Apple Retail Store in Orlando, Florida located in The Mall of Millenia 4200 Conroy Road, Orlando Florida, ("Orlando Store") under the supervision of senior manager Ashley Yates ("Yates")

- In discussing the transfer to the Australia Store with Yates, Yates had told Dupree that "Blacks don't make management in this market."

- Dupree was shocked, embarrassed, and humiliated by this comment, as it was made directly at him, and in the presence of others in a work setting at the Millenia Apple store.

- Dupree was later transferred to the Australia Store on, or about, July 27, 2012.

- Dupree brought to the Australia Store the same enthusiasm, skill and professionalism that he had demonstrated in the Orlando Store.
- While at the Australia Store, Dupree was advanced through the company and given a professional title of Mentor and was responsible for easy pay implementation for the entire market. Dupree flourished at the larger Flagship location, taking on leadership and mentoring roles and developing, implementing, and overseeing the most successful launch of the easy pay program throughout the entire country-(EXH-3)
- On, or about, July 09, 2013 Dupree decided to transfer back to the Orlando Store.
- On, or about, July 09, 2013 Dupree scheduled a video conference call with PJ Garcia ("Garcia"), Market Leader for the Central Florida Apple Retail Stores and Maximo Hernandez ("Hernandez"), Store Leader of the Millennia Apple Retail Store, about this transfer.
- The video conference was a collaboration between Dupree and management in the Australia Store that highlighted Dupree's impact and direct leadership. –(EXH 3)
- While all aspects of the transfer were near complete, the one issue of concern was Dupree's compensation, as he was being paid more at the Australia Store compared to his previous salary at the Orlando Store.
- Because Dupree produced a favorable review from his superiors at the Australia Store, Hernandez and Garcia favored his transfer to the Orlando Store.  (EXH-4))
- Dupree was asked to inform Yates regarding the transfer, to which Dupree complied by phone conference.  During this conference both Dupree and Yates agreed that Dupree would return to the Orlando Store in late August.  Dupree tried to recreate the earlier conference with Garcia and Hernandez focusing on his leadership skills and what he plans on bringing to the Orlando Store – this meeting was cut short by Yates.

- Prior to the official transfer date, Dupree returned to Florida on, or about, July 28, 2013.

- On, or about, July 28, 2013 Dupree went to the Orlando Store to attend a company meeting. The purpose of attending this meeting was so that Dupree would re-acclimate himself to the store and meet with Yates and the other employees.

- Dupree was told by Yates that because he was coming from another store, he would not be able to attend these meetings. Yates used company policy as a reason for denying his attendance.

- Dupree emailed Garcia about this policy, to which Garcia denied that this was company policy. In fact, it was very common for employees from other stores to attend meetings at different locations. (EXH-4))

- On, or about, early August 2013 the transfer to the Orlando Store had yet taken place. Dupree began to notice a series of meetings either being cancelled or rescheduled.

- Yates had emailed Dupree and told him that his transfer to the Orlando Store would be facilitated solely by herself and that all communications with Garcia and Hernandez would now be severed.

- On, or about, August 22, 2013 Yates and Hernandez summoned Dupree and terminated his employment suggesting that their expectations of Dupree's role in the company was different than his own plus he lacked the availability to work. Dupree was never given a chance to refute or get a better understanding of the reasons for his termination. (EXH-5)

- On, or about, August 23, 2013 and thereafter, Dupree sent numerous emails to Apple's Human Resources including Apple CEO Tim Cook (EXH-6) and Apple Corporate Karl Miller, Bernard Ryan, and Apple HR Susan Pierre Zilles requesting a meeting.

- On, or about, September 2013 Dupree was contacted by a Human Resources representative Brenda Everson ("Everson").
- After an initial inquiry with Dupree, Everson called a meeting with Dupree, Hernandez and Jennifer Laiahsang, Human Resources Leader for Florida. This meeting was held on, or about, October 2013. The purpose of this meeting was to clear up discrepancies between the recollection of events by Dupree, Yates and Hernandez.
- The following are the discrepancies at issue that were discussed and refuted by Dupree:
  - *Dupree's Visa Remained Valid*
    - It was argued by Hernandez that, the only reason that Dupree returned to the Orlando Store was because his visa had expired.
    - Dupree produced documents showing that his Visa was still valid and that he would be able to travel between the US and Australia freely.(EXH-7)
    -
  - *Dupree Was Promised a Position When He Returned*
    - It was argued by Hernandez that Dupree was never promised a position when he returned to the Orlando Store.
    - Dupree produced an email from Garcia demonstrating that she was under the impression that Dupree was to return to the Orlando Store. (EXH "4").
  - Dupree Was Permitted to Attend a Meeting at the Orlando Store
    - It was argued by Hernandez that Dupree would try and attended meetings at the Orlando Store without invitation
    - Dupree produced yet another email from Garcia stating that it was okay for Dupree to attend these meetings, and further, that it

was common practice that employees be able to attend these meetings. (EXH "4")

- On, or about, October 10, 2013 Everson told Dupree that management at the Central Florida Store ("Florida Store") would be contacting him regarding a possible position.

- Approximately two weeks later, Dupree was contacted by a senior manager at the Florida Store and set up an interview approximately two weeks after that.

- On, or about, December 02, 2013 Dupree was hired at the Florida Mall Store.

- However, he was hired back as a 'new hire' which meant a demotion in seniority and pay which Dupree protested in a e-mail to Brenda Everson. (EXH-8)

- Dupree filed this complaint against Apple on July 22, 2014 in the United States District Court Northern District of California. The allegations of the complaints are based on discrimination due to race or color and national origin. Dupree also alleges that discrimination was intentional as defined in 42 U.S.C. SECTION 1981. Dupree is also filing to have Tim Cook, Brenda Everson, and Susan Pierre-Zilles added as Defendants under Failure to take Reasonable Steps to Maintain Environment Free from Discrimination based on Race under the Fair Employment and Housing Act.

- Since the filing of the complaint, Dupree has been retaliated against by his employer.

- The following are some of the issues that Dupree has had to endure since the initial filing of this complaint:

  - Dupree is Locked Out of the System: Dupree is required to continue employment training as part of his role as Specialist. The continued employment training is done in house and via a computer application with requires employee identification and password. The continued training is crucial to the retail store and is a requirement of all

employees to complete.  Failing to complete this required continued training would ultimately have a negative effect on the employees' performance and is directly related to an employee's ability to grow within the company.  However Dupree is unable to continue his employment training, due to the fact that he has been locked out of the system since December 17, 2014. Dupree has informed his managers and inventory specialist of the issue, but nothing is being done about it. Dupree recently was scheduled to work in inventory and was unable to do so because was not able to login to a system all Apple employees are supposed to have access to. Once again Dupree informed the Inventory Specialist and the on duty manager and as of February 16th of 2015, Dupree still didn't have access and even received a e-mail from Apple his POS access. Dupree is literally unable to perform his job duties due to being locked out of a system all employees are technically supposed to be able to access despite raising this issue on numerous occasions.(EXH-9)

- <u>False Reporting of Tardiness</u>:  Apple employees have access to their employment records through an online application called mypage.apple.com.  As can be seen in the attached exhibits, Dupree had no occurrences on June 13, 2014 at 9:59pm but then, only ten (10) minutes later, had five tardies on his record. (Exhibit "3")

- <u>Changing Schedule Without Knowledge or Permission</u>:  Dupree takes pictures of his schedule weekly to ensure accuracy.  As can be seen on the attached exhibits, Dupree's schedule for the week of October 18, 2014 had him working on Tuesday October 21, 2014 from 6:30 pm to 11:00 pm. However, without his permission and knowledge, his schedule was later moved from 6:30 pm to 6:00 pm, which would have made him one-half hour late for work. (Exhibit "10").

- Singled Out | Verbal Warnings:  Part of the disciplinary actions of Apple is to first give their employees a verbal warning.  If the infraction continues, then the employee would receive a written warning followed possibly by their termination.  Dupree has been disciplined by verbal warning regarding wearing a baseball cap with a logo on store grounds.  However, as can be seen by the attached exhibits, it is common for employees to wear these types of baseball caps – with no disciplinary action taken. Dupree has documented other white employees wearing baseball caps with no reprimand. Dupree alleges that these actions taken against him by management were racially motivated. As of 3/9/2015 Dupree is still being singled out as other employees freely wear hats. (Exhibit "11").

- Senior manager Mark Urban pulled Dupree to the side and stated that Dupree was tardy coming back from break. Dupree disputed this claim and during the course of the conversation Mr. Urban stated "be careful, you're on my radar now". This is clearly a threat which Dupree took as either a physical threat or a threat on his employment with Apple. Dupree asked Mr. Urban's manager Toni David to attend a meeting with himself and Mark Urban so Dupree could voice the stress being threatened by Mark Urban is causing him. During this meeting Mark Urban admitted to saying "be careful, you're on my radar now". Despite this meeting and given the increasing frequency of retaliatory action against Dupree, the hostile work environment created had become to stressful for Dupree. He was going to see a neurologist regularly who was prescribing him migraine medication. Dupree was also seeing a acupuncture specialist for insomnia, migraines, involuntary muscle contractions, anxiety, and panic attacks which the acupuncture specialist attributed to the stress Dupree was

experiencing at work and due to his termination. The acupuncture specialist even gave Dupree several notes stating Dupree needs to be careful and take it easy at work, and avoid stressful situations at work since she said that's what is causing all Dupree's ailments. (EXH-12) Due to his declining health and hostile work environment and continued harassment, Dupree asked for a transfer to California. Dupree's girlfriend was also moving there as well so Dupree moved to California with her. Dupree also was not satisfied with the outcome of the meeting with Mark Urban so Dupree contacted Apple Corporate HR to complain about being threatened by Mr. Urban. Human Resources agreed that Mr Urban was wrong in threatening Dupree and stated that Mr Urban had been disciplined for his comments against Dupree.

- Dupree has been highly stressed during the course of intentional retaliation he's had to endure since filing his claim in federal court. Also the trauma of even being fired in the first place caused much stress and depression for Dupree. Upon initially being fired Dupree had a severe panic attack while driving home. Dupree's right leg began to shake uncontrollably at the thought of being unemployed at 31. Dupree also began to truly wonder how he would pay his half of the mortgage. All this sudden stress caused Dupree to panic. Dupree uses his right foot to press the car peddles used to make a car stop and go. Once his right leg kept shaking Dupree was violently rocking back and forth in his car trying to pull over and let the panic attack subside. Dupree was able to pull over to the side of the road, but the panic attack continued so Dupree called his brother who came to pick him up. Once home, Dupree sat in his room in the dark for days agonizing over what he did wrong. How he was going to create income and pay

rent. Dupree later discovered after complaining of neck pain, that he had sustained mild whiplash as a result of the panic attack he suffered from being abruptly fired. This was confirmed by his Chiropractor through X-ray's conducted on Dupree.(EXH-13)

- Upon moving to a different Apple Store in California, Dupree began to experience discrimination again from both Apple corporate employees and regular customers.  Which prompted Dupree to once again file for racial discrimination, Retaliation, and harassment against Apple Inc. Once again Dupree is seeking the aid of neurologist and acupuncture specialist because Dupree is once again experiencing migraines, insomnia, anxiety, and panic attacks due to racially discriminatory actions and harassment and retaliation being taken against him by Apple Inc. Dupree is also exercising his rights to refile his previous lawsuit since he dismissed it without prejudice (EXH-2) and it shows a disturbing pattern of intentional racism, retaliation, harassment, and other horrific behavior from Apple Inc dating back to 2012.

- The Apple Store in Los Gatos was 5 minutes from closing and a white female Apple Corporate  employee walked in and wanted a technician to take a look at her phone. Dupree positioned that there were no more techs or walk ins due to the fact that Apple closes in 5 minutes. She told Dupree he didn't know what he was talking about and she wanted to speak with someone else because she wasn't comfortable with Dupree. She then stated "you're obviously not from around here, where are you from..Oakland?".She flashed her Apple Corporate badge to establish her corporate credentials so Dupree fully understood that she could get him in trouble if he didn't assist or get someone she was more comfortable with. So Dupree escorted her over to his manger and a lead genius. Dupree stayed around long enough to hear their positioning and it was identical too his own. However, she took the news better coming from a white woman and man than an

African American male. Upon leaving the store, this Apple employee said "bye Oakland" to Dupree as she left.

- An Apple Corporate employee was handed over to Dupree for a personal pickup of a Mac and her Corporate badge was hanging off her belt. Dupree began to assist her with her transaction, but she abruptly stated "I'm going to work with that employee as she pointed to another Apple employee. This is a complicated order and I'm in a time crunch and I need a more professional employee and not one with a gang bandana hanging out of his pocket. Stupid diversity crap". Then she walked over to the Apple employee who then assisted her.

- Dupree was handed an interaction from the Family Room in which he was to perform a return of a product for a Apple Corporate employee who used his Apple discount to purchase a item online and pick it up here. He was returning the product and wanted to purchase another product with that discount. Dupree informed him that it's Apple policy that it takes 24 to 48 hours for his discount to replenish once a return has been performed. He became angry and asked " are you part of a new diversity program or something". Dupree then pulled back and stated he was going to go get a manager to confirm if what Dupree said was accurate. Dupree went to ask the manager who confirmed that was accurate and she stated she would be there to assist momentarily. Dupree returned and informed the employee of this, and he abruptly walked out of the store. Dupree informed the manager of what happened and she asked if Dupree needed a minute in the back to shake that off. Dupree responded that he was fine, but was quite shaken by the frequency of these encounters.

- These encounters continued to occur too Dupree and it got to the point where Dupree called a meeting with a Senior manager and Store Manager to voice his concerns on the reoccurring incidents. Dupree stated that he was being discriminated against by customers and the Apple Managers empathized with him. They stated "I've been marginalized for being a woman so they didn't think I

knew about technology, and some people are just ignorant and complain about diversity. We are so sorry about these situations and we will speak with others in the market to see if this is a market wide issue." Dupree also mentioned that he was experiencing the same discrimination from Apple Corporate employees and was told too ignore that as nothing more than "entitlement".

- In a follow up meeting with management Dupree again complained of continued discrimination that he keeps enduring in hopes that management will take action to cease the discrimination from Apple Corporate. Dupree was told in response to the racial discrimination that he needs to "get thicker skin, and to let the discrimination roll off his back. That the discrimination was a one-off which means it only happened once" Dupree stated that it was happening to him frequently. The manager then said that happens to her everyday which is impossible given the fact that she's a Caucasian Female. Dupree left that meeting feeling like he was told to ignore the racism being directed at him by Apple corporate employees even though they were happening weekly, and accept the racism being directed at him by customers because "he can't fix or change it".

- After Dupree received his right to sue from the EEOC he began to experience retaliation and harassment specifically from a Apple employee that asked Dupree to switch schedules with him. Dupree wasn't able to give an answer at the moment and said he would get back to him. This Apple employee then sent a email to management stating that Dupree had agreed to switch to his day so he could be off that day. Dupree had no knowledge of this since he never agreed to this. Dupree checked his schedule the day prior and saw that his schedule had been changed without his knowledge or consent just like in Orlando. Dupree came to work on that day but sought to speak with the employee believing it was possibly a simple misunderstanding. When Dupree saw the employee again he stated that he wanted to speak with him. This employee continually gave excuses and then began to blatantly ignore Dupree even going so far as to tell him he

would talk to him on his break. This employee then snuck out of the store and went on his break and Dupree found him in the break room and asked once again to speak with him concerning what occurred the week prior. The employee again made an excuse and at that point Dupree went to Management to intervene. Management did intervene and coordinated a meeting between Dupree and the employee. The employee stated that Dupree said he would take the schedule and Dupree stated to show him a document, e-mail, or text where he confirmed he would take the employees time. The employee apologized for his actions and the manager let him leave and then apologized for what happened to Dupree.

- Dupree has clearly and evidently been discriminated against, retaliated against, threatened and harassed and subjected to a hostile work environment so vicious that it caused multiple conditions Dupree still suffers from today. All this was done to Dupree because of his ethnicity and status as an African American who belongs to a protected class.

- These conditions that Dupree never experienced before being terminated were panic attack, anxiety, depression, migraines, insomnia, muscle spasms, neck trauma due to near missed accident brought on by a surprise termination from Apple. The harassment and retaliation that followed pushed Dupree to seek assistance through a neurologist and acupuncture therapist. Dupree was given medication for his migraines and notes from acupuncture specialist notating that Dupree's stress was solely attributed to his employment with Apple. Dupree's environment was so hostile he relocated to another area far from Orlando in hopes of a better environment to work in. However, he continued to experience racial discrimination from Apple and once he told his manger, she stated that Dupree needs to "grow thicker skin". Also continued harassment from Apple employees after receiving his right to sue has caused him to once again seek assistance from neurologist and acupuncture specialist.

- Dupree suffers and continues to suffer from the damage that was done, including but not limited to hostile remarks, hostile stares, disciplinary actions, retaliatory actions, hostile work environment and being belittled when complaining to management about the discrimination he is enduring from Apple. Dupree wants his civil rights as an African American maintained Dupree also wants all rights of African Americans protected and plans to help bring more diversity to technology as his reason for undertaking this battle.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

- Plaintiff has exhausted all administrative remedies necessary to bring this action. He filed a charge of discrimination with the US Equal Employment Opportunity Commission on May 16, 2014 and October and December of 2015. The Department issued a right-to-sue notice on June 12, 2014 and October and December of 2015. A true and correct copy of the right-to-sue letter is attached as (EXH-14)

## FIRST CAUSE OF ACTION
## RACE, COLOR, AND NATIONAL ORIGIN DISCRIMINATION
**(Title VII, 42 USC §2000e et seq. and California Fair Housing and Employment Act, Cal Gov. Code § 12940 et seq, 42 U.S.C SECTION 1981, Civil Rights Act of 1991)**
(Against Defendant Apple)

Plaintiff re-alleges the preceding paragraph and incorporates them herein as if fully set forth.

- Apple's actions constitute discrimination in Violation of Title VII, which prohibits discrimination on the basis of race, national origin, and religion. 42 USC §2000e 2(a).

- Apple's actions also constitute discrimination in violation of the Fair Housing and Employment Act ("FEHA"), which also prohibits discrimination against any person on the basis of race, national origin, or religion. Cal Gov. Code §12940(a).

- Dupree is an African American male. Because of his race, color and national origin he has been treated differently by his employer. Not only had he been told directly that "Blacks don't make management in this market...", when he returned to the Orlando Store and would have subsequently started advancing through the company (based on the experiences and training at the Australia Store), he was terminated. Dupree was also told while working with Apple in California that "he obviously wasn't from around here, where was he from....Oakland?" by a corporate Apple employee. Then repeatedly called "Oakland" during the transaction and even as the Apple employee left her final words to Dupree were "bye Oakland". On a separate occasions Dupree was asked by a Corporate Apple employee if he was "part of a new diversity program at this store" in reference to him being unqualified to do this type of work and only here because of the color of his skin. On a separate incident Dupree was reprimanded for wearing a hat in the back of house space by the store leader, yet Dupree photographed several other white employees wearing hats with logos in the back and they received no such reprimand. Then on another occasion in California a corporate Apple

employee was being helped by Dupree and she told him she "didn't want to be helped by a guy with a bandana like he's part of a gang, stupid diversity crap...get me someone else please". Dupree also brought his concerns with Apple discrimination to his senior manager who told him the way to deal with these interactions was to "get tougher skin" and "let it roll off your back" and that these occasions are "simply one-offs" meaning they rarely happen. Then saying that she deals with it everyday which is difficult to agree with given the fact that she's a caucasian woman.

- Further, when Dupree was asked to return to Apple, he was demoted in seniority and pay.

- As a direct, deliberate and proximate result of Apple's discriminatory actions, Dupree has and continues to suffer general and special damages, including, but not limited to, loss of income due to demotion, pain and suffering, and emotional distress, in accordance with 42 U.S.C. Section 1981. (Exhibit "12")

### SECOND CAUSE OF ACTION
### RETALIATION DISCRIMINATION
**(Title VII, 42 USC §2000e et seq. and California Fair Housing and Employment Act, Cal Gov. Code § 12940 et seq, 42 U.S.C. Section 1981, Civil Rights Act of 1866, and the Civil Rights Act of 1991)**
(against Defendant Apple)

Plaintiff re-alleges the preceding paragraph and incorporates them herein as if fully set forth.

- Apple's actions constitute retaliation in Violation of Title VII, which prohibits retaliation against employees who engage in protected activities, such as

complaining of discrimination based on race, national origin, or religion.  42 USC §2000e-2(a), §2000e-3(a).

- Apple's actions also constitute retaliatory termination in violation of FEHA which prohibits retaliation of any person for opposing any practices forbidden by FEHA such as discrimination based on race, national origin, or religion. Cal. Gov. Code §12940(a), §12940(h).

- Such violations of the above code includes, but is not limited to:
  - Being locked out of Apples Training System; (exhibit "9")
  - Falsely reporting tardiness;
  - Changing his work schedule without his knowledge or permission; (exhibit "10")
  - Racially motivated bogus disciplinary actions. (Exhibit "11")

- As a direct and proximate result of Apple's discriminatory actions, Dupree has been deprived of promotions, employment, income, and other conditions of employment because of his race. Dupree continues to suffer embarrassment, humiliation, mental distress,  general and special damages, including, but not limited to, pain and suffering, and emotional distress (exhibit "12") in an amount of $25 million according to proof.

- Defendant engaged in the discriminatory practices complained of herein with malice and/or with reckless indifference to the plaintiffs federally protected rights. (Exhibit "9,10,11,13")

- The plaintiff has no plan, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for compensatory and punitive damages,

emotional distress damages, injuctive relief and declaratory judgement is plaintiff's only means of adequate relief.

- The plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and procedures as set forth herein unless enjoined by this court.

## THIRD CAUSE OF ACTION

## RACIAL DISCRIMINATION UNDER COLOR OF STATE LAW

## 42 U.S.C. SECTION 1983

## (against Defendant Apple)

Plaintiff re-alleges preceding paragraph and incorporates them herein as if fully set forward.

Apple's actions constitute discrimination in violation of 42 U.S.C. SECTION 1983, which prohibits discrimination on the basis of race, religion, and national origin. Dupree is a African American male. Because of his race, color, and national origin he has been treated differently by his employer. He was told directly by management "Blacks don't make management in this market...". When he returned to the Orlando Store where he should have begun furthering his career since having possibly his best year and a half with Apple. Instead he was fired by the very manager who made that racial remark, and who cut off his dialogue with her superiors. Leaving the success or failure of his job solely in her hands, and two weeks later Dupree was fired.

When Dupree returned to Apple, he was demoted in seniority and pay. As a direct and deliberate result of Apple's discriminatory action's, Dupree has been deprived of promotions, employment, income and other benefits of employment because of his race. Dupree was called "Oakland because of his race. Dupree was also asked if he was part of a "Diversity Program" because of his race. Finally, Dupree was given a verbal warning for his hat and assumed to be in a gang because of his race. Dupree continues to suffer mental distress, emotional distress, insomnia, and headaches as a direct result of Apple's discriminatory practices and retaliatory actions which are in violation of 42 U.S.C. & 1983

## FOURTH CAUSE OF ACTION

## FAILURE TO TAKE REASONABLE STEPS TO MAINTAIN AN ENVIRONMENT FREE FROM DISCRIMINATION  BASED ON RACE IN ACCORDANCE WITH THE FAIR EMPLOYMENT AND HOUSING ACT

(against Defendant Apple, Tim Cook, Brenda Everson, Susan Pierre-Zilles)

Apple CEO Tim Cook's action constitute lack of a discrimination free environment. Cook even admitted after pressure from news outlets to release diversity numbers, that these numbers weren't satisfactory. Out of 98,000 apple employee's, less than 3000 currently hold leadership positions. Apple and Cook even knew of the ordeal Dupree was dealing with since responding directly to it, yet the manager and leadership team responsible are still there with no disciplinary action or termination for this atrocious behavior.  Cook has taken no steps to make sure this direct discrimination in the Central Florida Market

doesn't happen again despite multiple African American Apple employee's complaining about the same manager. Dupree continues to suffer retaliation due to Cook's lack of action towards management in this market. Even now, Dupree is in another market with Apple and experiencing discrimination worse than in the central Florida market, and when he complained of it he was told by a senior manager to "grow thicker skin".

Tim Cook, Brenda Everson, and Susan Pierre-Zilles haven't disciplined or terminated anyone involved in the Discriminatory actions against Plaintiff. Even after Plaintiff presented clear documents showing his termination was completely without merit. The Senior manager who allegedly made the statement "black people don't make management" just finished a career experience in Cuppertino at Apple's Corporate headquarters. Cook has failed miserably to establish a discrimination free environment for Dupree and those like him facing workplace discrimination based on their color or protected class.

## FIFTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL STRESS

### (Against all Defendants)

Plaintiff is informed and believe and thereon allege that Defendants by and through their managers and employees, decided without regard to the health and safety of Plaintiff treated him in a deplorable manner alleged herein. That treatment and its surrounding consequences, including but not limited to a Senior Manager telling Plaintiff " black people don't make management in this market, then firing Plaintiff after Plaintiff had his best single year at Apple and was seeking management constitutes extreme and

outrageous conduct by Defendants. Also being called "Oakland" in reference to lack of diversity in Silicon Valley as well as being asked if he's in a "diversity program", and giving verbal warnings for hats when other white employees never received one is equally horrendous. Also assuming Plaintiff is in a gang is a horrible assumption to make because Plaintiff is African American. Plaintiff eventually got fed up with the Discrimination and told a Senior Manager who's advice in dealing with Racism within Apple is too "grow thicker skin". Tim Cook, Brenda Everson, and Susan Pierre-Zilles haven't disciplined or terminated anyone involved in the Discriminatory actions against Plaintiff. Even after Plaintiff presented clear documents showing his termination was completely without merit. The a Senior manager who allegedly made the statement "black people don't make management" just finished a career experience in Cupertino at Apple's Corporate headquarters.

Plaintiff is informed and believe and thereon allege that Defendants, standing in a position of authority over Plaintiff, acted with deliberation without regard to health, safety or well-being of Plaintiff and caused them severe emotional and physical distress. Plaintiff is informed and believe and thereon allege that as a proximate result of Defendants extreme and outrageous acts, Plaintiff suffered severe emotional distress in the form of humiliation, anxiety, migraines, insomnia, panic attacks, depression, mild whip-lash, insults, and hostile environment. Defendants acts were done with the willful knowledge that Plaintiff could suffer severe harm as a result thereof.

Plaintiff is informed and believe and thereon allege that Defendants' acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiff's rights. As

such, punitive damages are warranted against Defendant in order to punish them and make an example of their actions.

## Racial discrimination in violation of the California unruh  civil rights act

### 51 (b) 51 (e)

### (Against Apple)

Plaintiff is African American. Defendant Apple was motivated by prejudice against plaintiff. Defendant violated Plaintiffs rights under California civil code section 51.5 by discriminating against plaintiff based on his race, which are characteristics protected thereunder by inclusion in civil code section 51 (b) and 51 (e). As an approximate result of defendants wrongful conduct, plaintiff suffered damages as set forth elsewhere within this complaint.

These actions are best displayed through the comments by apple corporate employees toward plaintiff "you're obviously not from around here, where are you from..Oakland?", "are you part of a diversity program", "I want someone more professional and doesn't have a bandana in his pocket like a gang member". As these acts continued happening, plaintiff whether to his senior manager for assistance dealing with these ordeals. Plaintiff's goal was to find a way to end them, but was told by his senior manager the way to deal with Apple's racism was to "grow thicker skin" and "let it roll off your back", and "not take it personal". Plaintiff told senior manager that those apple racist remarks were the ones that hurt the most. Plaintiff felt obviously unsupported and that senior manager

was condoning Apple's racism as "entitlement" and nothing more. Even though she previously stated that she understands as a woman what it's like to be marginalized by your employers. Then when Plaintiff made the parallel between the customers and apple corporate, she quickly called Apple's actions "entitlement" and the customers actions "disgusting lack of diversity". Even though plaintiff sees no difference between the two besides one being apple corporate and the other being a customer. Plaintiff believes racism is formless, Apple is just as guilty of racism as the customers, and even more so because the senior manager was willing to excuse Apple's behavior which should never be the case.

Defendants acts alleged herein are malicious, oppressive, despicable and in conscious disregard for Plaintiff's rights.

As such, Punitive damages are warranted against Defendants in order to punish and make an example of them.

## PRAYER FOR RELIEF

WHEREFORE, Dupree seeks relief from this Court in the following respects:

$25million

- For special and general damages according to proof;

- For compensatory damages for lost wages according to proof;

- For restitution, injunctive relief, and other equitable remedies;

- For punitive damages;

- For a permanent injunction prohibiting defendants from engaging in violation of relevant provisions of the California Government Code, including the Fair Employment and Housing Act;

- For costs of suit incurred herein;

- For prejudgment and post-judgment interest as available by law; and

- For such other and further relief as this Court may deem just and proper.

- Emotional Distress Damages

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for each cause of action on which he is entitled to a jury trial.

Dated:                      1/13/2016                                    Respectfully
submitted,

Andrew Dupree
Plaintiff in PRO PER