UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREW R. DUPREE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>APPLE, INC., et al.,<br><br>　　　　　Defendants. | Case No. 16-CV-00289-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 39 |

Plaintiff Andrew Dupree ("Plaintiff") brings this action against Apple, Inc., Tim Cook, Brenda Everson, and Suzanne Pierre-Ziles (collectively, "Defendants"). Before the Court is Defendants' motion to dismiss certain causes of action in Plaintiff's Second Amended Complaint. ECF No. 39 ("Mot."); ECF No. 36 ("SAC"). The Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and thus VACATES the motion hearing set for August 11, 2016, at 1:30 p.m. The case management conference, currently set for August 11, 2016, at 1:30 p.m., is CONTINUED to October 19, 2016, at 2:00 p.m. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendants' motion to dismiss.

## I.　　BACKGROUND

1

### A.  Factual Background

On February 15, 2011, Plaintiff began working as a retail specialist for Apple, Inc. ("Apple") at Apple's retail store at the Millenia Mall in Orlando, Florida (the "Millenia Mall store"). SAC ¶ 5.  Plaintiff, an African American, alleges that a manager at the Millenia Mall store told him that "[b]lacks don't make management in this market." *Id.* ¶ 9.  "[S]hocked, embarrassed, and humiliated by this comment," Plaintiff requested and was granted a transfer to the Apple retail store in Sydney, Australia (the "Australia store"). *Id.* ¶ 10.  Plaintiff began working in Australia on July 27, 2012. *Id.* ¶ 11.

On July 9, 2013, Plaintiff decided to transfer back to the Millenia Mall store, and contacted Millenia Mall store leadership. *Id.* ¶ 15.  Plaintiff avers that Millenia Mall store leadership indicated that they would be receptive to Plaintiff's return, and Plaintiff returned to Florida on July 28, 2013. *Id.* ¶ 20.  On August 22, 2013, however, Millenia Mall store leadership contacted Plaintiff and informed him that he would not be rehired.

Upon learning this news, Plaintiff sent emails to Apple CEO Tim Cook ("Cook") and Apple Human Resources representatives Brenda Everson ("Everson") and Susan Pierre-Zilles ("Zilles"). *Id.* ¶¶ 27–28.  In response to these emails, Everson informed Plaintiff on October 10, 2013 that management at Apple's retail store in Central Florida "would be contacting him regarding a possible position." *Id.* ¶ 31.  On December 2, 2013, Plaintiff was hired at the Central Florida Apple retail store (the "Central Florida store"). *Id.* ¶ 33.

While working in Central Florida, Plaintiff alleges that he was discriminated based on his race and national origin.  Plaintiff, for instance, states that he was disciplined for wearing a "baseball cap with a logo on store grounds," while it was "common for [other] employees to wear these types of baseball caps with no disciplinary action taken." *Id.* ¶ 35.  Plaintiff also alleges that he was falsely reported as being late, that his work schedule was changed without his knowledge, and that he was threatened by his manager.  *Id.*

In September 2015, Plaintiff transferred to the Apple retail store in Los Gatos, California, where he is currently employed (the "California store").  ECF No. 28 at 10.  During his tenure in Los Gatos, Plaintiff alleges that he continues to be subject to racial discrimination.  Plaintiff points

2

specifically to four incidents.  First, a corporate Apple employee who had asked Plaintiff to help fix her Apple device allegedly called Plaintiff "Oakland" because Plaintiff "wasn't from around here" and "must be from Oakland since he is African American."  SAC ¶ 36.  Second, another Apple employee allegedly asked whether Plaintiff was "part of some kind of new diversity program" when the employee became frustrated with Plaintiff's service.  *Id.* ¶ 37.  Third, another Apple employee "stated [that] she wanted to work with someone more professional looking and not someone who looked like they were part of a gang."  *Id.* ¶ 38.  Most recently, in 2016, Plaintiff alleges that one of his coworkers threatened to "punch [Plaintiff] in the face," that another coworker yelled at Plaintiff for no reason, and that Plaintiff's schedule was changed without his knowledge or consent.  *Id.* ¶ 39.

**B.  Procedural History**

On July 22, 2014, Plaintiff filed a complaint against Apple which alleged discrimination on the basis of race and national origin, in violation of Title VII of the Civil Rights Act ("Title VII").  *Dupree v. Apple Inc.* ("*Dupree I*"), No. 14-CV-3294 (N.D. Cal.).  The complaint was filed in the Northern District of California, but focused on events occurring at the Millenia Mall store.  *Id.* at 6.  Accordingly, on March 11, 2015, U.S. District Judge Edward Davila, to whom *Dupree I* was assigned, granted Apple's motion to transfer *Dupree I* to the Middle District of Florida.  *Dupree I*, ECF No. 46.  As Judge Davila noted, "Apple has demonstrated based primarily on Plaintiff's allegations that most if not all of the critical events giving rise to Plaintiff's claims occurred in or around [an] Orlando Apple store."  *Id.* at 3.

On March 16, 2015, *Dupree* was officially transferred into the Middle District of Florida and was assigned to U.S. District Judge Kendall Sharp.  *Dupree v. Apple Inc.*, No. 15-CV-0423 (M.D. Fla.), ECF No. 47.  On April 7, 2015, Judge Sharp granted Plaintiff's motion for leave to amend his complaint.  *Dupree I*, ECF No. 62.  Plaintiff's amended complaint added Cook, Zilles, and Everson as Defendants, and alleged causes of action based upon violations of Title VII, the California Fair Employment and Housing Act ("FEHA"), and 42 U.S.C. § 1981.

On April 24, 2015, Defendants moved to dismiss certain causes of action in Plaintiff's first

3

amended complaint.  On June 30, 2015, Judge Sharp granted Defendants' motion to dismiss. *Dupree I*, ECF No. 69 ("*Dupree I* MTD").  First, Judge Sharp held that Plaintiff could not move forward with Plaintiff's FEHA claims because FEHA does not apply to conduct occurring outside of California.  Next, Judge Sharp held that Plaintiff could not bring a Title VII claim against Cook, Zilles, and Everson because "individual capacity suits under Title VII are inappropriate."  *Id.* at 7 (alterations omitted).  Finally, Judge Sharp determined that Plaintiff had failed to state a cause of action under 42 U.S.C. § 1981 against Cook, Zilles, and Everson.  *Id.* at 9.  Judge Sharp also concluded that amendment would be futile, and granted Defendants' motion to dismiss with prejudice.  Because Defendants did not move to dismiss all causes of action against all Defendants in *Dupree I*, a portion of Plaintiff's first amended complaint survived dismissal.

On September 29, 2015, Judge Sharp granted Plaintiff's motion to dismiss Plaintiff's surviving claims in *Dupree I* without prejudice, as "Plaintiff wishe[d] . . . to end litigation of this matter without incurring further expenses."  *Dupree I*, ECF No. 84.

On January 19, 2016, Plaintiff filed the original complaint in the instant action.  ECF No. 1 ("Compl.").  The Court shall refer to all proceedings in the instant action as *Dupree II*.  Plaintiff filed a motion for leave to amend on April 11, 2016, which Defendants did not oppose.  ECF No. 23.  Accordingly, the Court granted Plaintiff's motion to amend on the record at the April 27, 2016 initial case management conference.  ECF No. 32.

On May 25, 2016, Plaintiff filed another motion for leave to amend.  ECF No. 33.  Defendants also did not oppose this second motion to amend.  ECF No. 37.  Plaintiff, however, referred to the proposed amended complaint as the "First Amended Complaint."  ECF No. 36.  As the procedural history demonstrates, however, Plaintiff's May 25, 2016 motion in fact sought leave to file a third complaint in *Dupree II*.  Accordingly, the Court granted Plaintiff's May 25, 2016 motion for leave to amend, but stated that it would refer to the "proposed amended complaint as the 'Second Amended Complaint' or 'SAC' in . . . all future Orders."  ECF No. 38 at 2.

Defendants moved to dismiss the SAC on June 29, 2016.  Plaintiff filed a response on July 13, 2016, and Defendants filed a reply on July 20, 2016.  ECF No. 40 ("Opp'n"); ECF No. 43

Case No. 16-CV-00289-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

("Reply").

## II.      LEGAL STANDARD

### A.  Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

### B.  Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be

Case No. 16-CV-00289-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.    DISCUSSION

Of the nine causes of action in the SAC, Defendants move to dismiss the first, second, fourth, fifth, sixth, seventh, and ninth causes of action.  The Court addresses Defendants' arguments in turn.

### A.  First and Fifth Causes of Action: Title VII

Plaintiff alleges that Defendants violated Title VII of the Civil Rights Act ("Title VII") by subjecting Plaintiff to race, color, and national origin discrimination (first cause of action) and by retaliating against Plaintiff for complaining about this discrimination (fifth cause of action).  SAC ¶¶ 40, 52.  In response, Defendants argue that Plaintiff is time-barred from asserting a Title VII claim insofar as it relates to incidents occurring at the Millenia Mall and Central Florida stores.  In addition, although Plaintiff does not appear to allege that Defendants violated Title VII during Plaintiff's employment in Australia, Defendants also argue that Plaintiff may not bring a Title VII claim based on incidents occurring at the Australia store.  Defendants do not challenge whether Plaintiff may bring a Title VII claim based on incidents occurring at the California store.

Pursuant to 42 U.S.C. § 2000-e5(e)(1), "a Title VII plaintiff [must] file a charge with the Equal Employment Opportunity Commission (EEOC) . . . after the alleged unlawful employment practice occur[s]."  *Nat'l. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104–05 (2002) (internal quotation marks omitted).  "If the EEOC does not bring suit based on the charge, the EEOC must notify the person aggrieved that she can file suit."  *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008) (internal quotation marks omitted).  "The notice is accomplished through a right-to-sue letter.  Once a person receives an EEOC right-to-sue letter, [he or] she has 90 days to file suit."  *Id.*  This "90-day filing period is a statute of limitations," which is "subject to equitable tolling in appropriate circumstances."  *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1174 (9th Cir. 1986); *accord Morgan*, 536 U.S. at 121 (describing Title VII deadline requirements as subject to equitable tolling).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

As noted in the factual background, Plaintiff worked (1) at the Millenia Mall store from February 2011 to July 2012; (2) at the Australia store from July 2012 to July 2013; (3) at the Central Florida store from December 2013 to September 2015; and (4) at the California store from September 2015 to the present.  Plaintiff has, over the course of his employment at Apple, filed four charges with the EEOC, on May 16, 2014; October 13, 2015; December 1, 2015; and May 5, 2016.  SAC ¶ 3; ECF No. 39-1 at 1–2.  As discussed in greater detail below, none of these four EEOC charges pertains to Plaintiff's employment at the Australia store—the first two charges (May 16, 2014 and October 13, 2015) pertain to incidents at the Millenia Mall and Central Florida stores, and the latter two charges (December 1, 2015 and May 5, 2016) pertain to incidents at the California store.

First, in Plaintiff's May 16, 2014 EEOC charge, Plaintiff alleged unlawful practices which took place at the Millenia Mall store.  The May 16, 2014 EEOC charge did not allege any discrimination arising from Plaintiff's employment at the Australia or Central Florida stores, and Plaintiff had not yet transferred to the California store.  The EEOC did not bring suit based on Plaintiff's May 6, 2014 charge, and issued Plaintiff a right to sue letter on June 12, 2014.

Next, in Plaintiff's October 13, 2015 EEOC charge, Plaintiff alleged unlawful practices that took place at the Millenia Mall and Central Florida stores.  ECF No. 1-1 at 29–30.  Plaintiff's October 13, 2015 EEOC charge did not allege any discrimination arising from Plaintiff's employment at the Australia or California stores.  The EEOC declined to bring suit on Plaintiff's October 13, 2015 charge, and issued Plaintiff a right to sue letter on October 15, 2015.

Finally, both the December 1, 2015 and May 5, 2016 EEOC charges alleged unlawful practices which took place at the California store.  ECF No. 39-1 at 4–8.  These charges do not mention any discrimination arising from Plaintiff's employment at the Millenia Mall, Australia, or Central Florida stores.  As before, the EEOC declined to bring suit, and issued right-to-sue letters on December 2, 2015 and May 12, 2016.  ECF No. 36-3 at 9–12.

Plaintiff filed the original complaint in the instant action on January 19, 2016.  As such, the June 12, 2014 and October 15, 2015 right-to-sue letters, which relate to incidents that occurred at

Case No. 16-CV-00289-LHK
ORDER GRANTING MOTION TO DISMISS

the Millenia Mall and Central Florida stores, fall outside the 90-day filing period: there are 586 days between June 12, 2014 and January 19, 2016, and 96 days between October 15, 2015 and January 19, 2016. Consequently, Plaintiff's first and fifth causes of action under Title VII would be time-barred by Title VII's statute of limitations unless equitable tolling applies.

In opposing Defendants' motion, Plaintiff argues that he filed *Dupree I* on July 22, 2014, which was within 90 days of the EEOC's June 12, 2014 right-to-sue letter. On September 29, 2015, *Dupree I* was dismissed without prejudice because Plaintiff was "under [the] legal advisement that as long as it was without prejudice he could file it again [i]f he so chose." Opp'n at 4. The advice Plaintiff received "proved to be inaccurate," and Plaintiff is "now hoping to get his complaint tolled to include certain events from Florida relevant to California that show a disturbing pattern of behavior in regards to his employment with Apple." *Id.*[1]

Plaintiff's arguments are foreclosed in light of Ninth Circuit precedent. Specifically, in *O'Donnell v. Vencor Inc.*, 466 F.3d 1104 (9th Cir. 2006) (per curiam), plaintiff filed her original Title VII complaint against her employer "within ninety days after the issuance of her right-to-sue letter by the EEOC." *Id.* at 1109. The case was eventually stayed and placed on inactive status, pending resolution of a bankruptcy proceeding. The magistrate judge presiding over plaintiff's Title VII claims gave plaintiff "180 days to move to lift the stay, seek to reduce the claims against [d]efendant to judgment in the bankruptcy court, or otherwise demonstrate a reasonable basis to continue the case on inactive status." *Id.* at 1110. The magistrate judge warned plaintiff that failure to comply with the magistrate judge's order "would result in dismissal of [plaintiff's] complaint for failure to prosecute." *Id.*

Plaintiff in *O'Donnell* failed to respond to the magistrate judge's order and failed to appear at a status conference. Consequently, the magistrate judge dismissed plaintiff's Title VII complaint without prejudice, a decision which plaintiff did not appeal. Plaintiff eventually filed a second Title VII complaint, which was more than 90 days after receiving her right-to-sue letter.

---

[1] Notably, Plaintiff does not argue that *Dupree I* tolled the allegations in his October 13, 2015 EEOC charge, which related to alleged discrimination at the Central Florida store.

8

Case No. 16-CV-00289-LHK
ORDER GRANTING MOTION TO DISMISS

The Ninth Circuit determined that "[t]he Title VII . . . claims asserted in [plaintiff's] second complaint [were] untimely," because plaintiff "filed her second complaint more than ninety days after the EEOC's issuance of her right-to-sue letter." *Id.* at 1111. Plaintiff's complaint did not "relate back to her first complaint because her second complaint was not an amendment to her first complaint, but rather a separate filing." *Id.* (internal quotation marks omitted). As to tolling, the Ninth Circuit held that, "[i]n instances where a complaint is timely filed and later dismissed, the timely filing of the complaint does not 'toll' or suspend the 90-day limitations period." *Id.* "In such cases, dismissal of the original suit, even though labeled as without prejudice, nevertheless may sound the death knell for the plaintiff's underlying cause of action if the sheer passage of time precludes the prosecution of a new action." *Id.* Moreover, even if equitable tolling were to apply, "the ninety day limitations period [in *O'Donnell*] had run before the . . . automatic stay was issued." *Id.* "At that point, there was no longer any time left in the ninety-day limitations period to equitably toll." *Id.*

The reasoning in *O'Donnell* governs the instant case. As in *O'Donnell*, Plaintiff's attempts to apply tolling based on the filing and dismissal without prejudice of a prior complaint is unavailing. As the *O'Donnell* court noted, "dismissal of the original suit, even though labeled as without prejudice, nevertheless may sound the death knell for the plaintiff's underlying cause of action if the sheer passage of time precludes the prosecution of a new action." *Id.* Morever, even if equitable tolling were to apply, Plaintiff's causes of action would still be untimely: Plaintiff filed *Dupree II* on January 19, 2016, 112 days after *Dupree I* was dismissed without prejudice.

Accordingly, Defendants' motion to dismiss Plaintiff's first and fifth causes of action insofar as they concern alleged Title VII violations that occurred at the Millenia Mall, Australia, and Central Florida stores, is GRANTED. In addition, the Court denies Plaintiff leave to amend. Courts within the Ninth Circuit continue to follow *O'Donnell*, and *O'Donnell* is in accord with other circuit courts to have considered the question. *See, e.g.*, *Dougherty v. Bellevue Sch. Dist.*, 553 F. App'x 745, 746 (9th Cir. 2014) (citing *O'Donnell* and noting that plaintiff's claims were time-barred because they were filed outside the 90-day statutory period); *Mann v. Standard Motor*

Case No. 16-CV-00289-LHK
ORDER GRANTING MOTION TO DISMISS

*Prods.. Inc.*, 532 F. App'x 417, 418 (4th Cir. 2013) (per curiam) ("The ninety-day statute of limitations period for Title VII actions is not tolled because the initial action was dismissed without prejudice."). Amendment would therefore be futile. Defendant's motion to dismiss Plaintiff's first and fifth causes of action as they relate to Title VII violations which occurred at the Millenia Mall, Australia, and Central Florida stores is therefore GRANTED with prejudice.

**B. Second Cause of Action: FEHA**

Next, Defendants move to dismiss Plaintiff's second cause of action, for racial discrimination in violation of FEHA, to the extent that this cause of action is based on discrimination that occurred at the Millenia Mall, Australia, and Central Florida stores. As Defendants note, FEHA is a California law which does not apply to conduct "that occurs outside of California.

Judge Sharp addressed this very argument in dismissing Plaintiff's FEHA claims with prejudice in *Dupree I.* As Judge Sharp observed, "California courts have unequivocally declined to apply . . . FEHA to non-residents employed outside of California when the tortious conduct at issue did not occur in California." *Dupree I* MTD at 5.

Judge Sharp's analysis is well taken. Indeed, in opposing the instant motion, Plaintiff acknowledges "that FEHA doesn't apply to events that occurred in Florida since California law of course can't be applied to laws broken in Florida." Opp'n at 11. Accordingly, Defendants' motion to dismiss Plaintiff's second cause of action, to the extent that Plaintiff seeks relief for discrimination under FEHA at the Millenia Mall, Australia, and Central Florida stores, is GRANTED with prejudice.

**C. Fourth Cause of Action: Civil Rights Act of 1991**

Plaintiff's fourth cause of action seeks recovery for employment discrimination under the Civil Rights of 1991. SAC ¶ 49. The 1991 Civil Rights Act, however, does not provide plaintiffs a substantive right or cause of action. Rather, the statute merely provides additional remedies for unlawful discrimination that is prohibited by some other federal law. *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998). In Plaintiff's opposition, Plaintiff acknowledges that he can not

Case No. 16-CV-00289-LHK
ORDER GRANTING MOTION TO DISMISS

bring a cause of action under the 1991 Civil Rights Act, and agrees to remove this cause of action in future pleadings.  Opp'n at 11.  Accordingly, Defendants' motion to dismiss Plaintiff's fourth cause of action, for violations of the Civil Rights Act of 1991, is GRANTED with prejudice.

### D.  Sixth Cause of Action: Intentional Infliction of Emotional Distress

Plaintiff's sixth cause of action states a claim for intentional infliction of emotional distress.  "Under California law, there is a two-year statute of limitations for intentional infliction of emotional distress claims."  *Soliman v. CVS RX Servs., Inc.*, 570 F. App'x 710, 711 (9th Cir. 2014).  Defendants thus move to dismiss Plaintiff's intentional infliction of emotional distress claim insofar as it arises from incidents occurring prior to January 19, 2014.  Plaintiff acknowledges this two-year statute of limitations, and his opposition focuses only upon conduct which occurred after January 19, 2014.  Accordingly, Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress cause of action for incidents occurring prior to January 19, 2014 is GRANTED with prejudice.

As to incidents occurring after January 19, 2014, in order to sustain a claim for intentional infliction of emotional distress, a plaintiff must plead the following elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 819 (Cal. 1993).  Outrageous conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Id*.

In the instant case, the SAC's allegations can be grouped into three categories: (1) Plaintiff's issues with Apple's internal training, scheduling, and discipline systems; (2) racially-charged comments directed at Plaintiff; and (3) a verbal threat directed at Plaintiff.  In moving to dismiss the SAC, Defendants do not challenge whether the verbal threat directed at Plaintiff, which occurred at the California store, constitutes intentional infliction of emotional distress.  Mot. at 8.  Defendants, however, argue that incidents falling within the first two categories do not

11

Case No. 16-CV-00289-LHK
ORDER GRANTING MOTION TO DISMISS

support a cognizable claim for intentional infliction of emotional distress.  The Court examines each category below.

### 1.  Internal Training, Scheduling, and Discipline

First, Plaintiff alleges that he could not log onto Apple's internal training system, that his work schedule was changed without his knowledge or permission, and that he was falsely reported for being late to work.  SAC ¶¶ 35, 39.  Plaintiff also avers that he was given a verbal warning for wearing a baseball cap at work, even though other similarly-situated employees were not so warned.  Finally, Plaintiff alleges that, after Plaintiff's manager in Central Florida determined that Plaintiff "was tardy coming back from [a] break," Plaintiff's manager told Plaintiff to "be careful, you're on my radar now."  *Id.* ¶ 35.

With respect to these allegations, California courts have held that "personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like," does not constitute "outrageous conduct beyond the bounds of human decency."  *Janken v. GM Hughes Elecs.*, 53 Cal. Rptr. 2d 741, 746, 756 (Ct. App. 1996).  As the *Janken* court noted, "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society."  *Id.* at 756.  Thus, "[a] simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.  If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination."  *Id.*

"Numerous federal courts have applied *Janken* to foreclose claims for IIED when the supervisor's conduct falls within the confines of her managerial role."  *Gomez v. Rehabilitation*, 2016 WL 370692, *3 (C.D. Cal. Jan. 29, 2016).  These courts have specifically held that "management-level decisions involving employee placement, workplace investigations, performance evaluations, and staffing" do not give rise to a cause of action for intentional

12

infliction of emotional distress.  *Id.*; *accord Brock v. Pepsi-Cola Bottling Co.*, 21 F. App'x 647, 649 (9th Cir. 2001) ("At best, [plaintiff] has made a simple pleading of discriminatory or retaliatory personnel management activity, which in California is insufficient to support a claim of intentional infliction of emotional distress.") (internal quotation marks and alterations omitted).

  *Janken*, *Gomez*, and *Brock* govern Plaintiff's complaints about Defendants' training, scheduling, and discipline.  In particular, Plaintiff's complaints about his work schedule and ability to access Apple's training system fall clearly within the purview of personnel management actions, as they involve employee placement and staffing.  2016 WL 370692, *3.  In addition, the verbal warning Plaintiff received about wearing a hat constitutes the sort of supervisory conduct common at many workplaces.  *Janken*, 53 Cal. Rptr. 2d at 756 (noting that performance evaluations and job or project assignments constitute personnel management actions).

  Indeed, in Plaintiff's opposition, Plaintiff does not argue that the above incidents can sustain a claim for intentional infliction of emotional distress.  Opp'n at 8.  Instead, Plaintiff focuses upon "the verbal threat" he received from Central Florida store manager Mark Urban ("Urban"), who stated "you're on my radar now" after finding Plaintiff "tardy coming back from [a] break."  *Id.*; SAC ¶ 35.  As alleged in the SAC, "Plaintiff took this [warning] as either a physical threat or a threat on his employment with Apple."  *Id.*  "Plaintiff asked Mr. Urban's manager Toni David to attend a meeting with himself and Mark Urban so Plaintiff could voice the stress being threatened by Mark Urban [was] causing him."  *Id.*  "During this meeting, Mark Urban admitted to saying 'be careful, you're on my radar now'.  Despite this meeting, the hostile work environment created had become too stressful for Plaintiff."  *Id.*  Plaintiff eventually "contacted Apple Corporate HR to complain about being threatened by Mr. Urban.  Human Resources agreed that Mr. Urban was wrong in threatening Plaintiff and stated that Mr. Urban had been disciplined for his comments against Plaintiff."  *Id.*  In spite of his meetings with David and with Apple HR, Plaintiff alleges that he continued to suffer various health consequences as a result of the incident with Urban, and asked for a transfer to California.

  In order to bring a claim for intentional infliction of emotional distress, a plaintiff must

Case No. 16-CV-00289-LHK
ORDER GRANTING MOTION TO DISMISS

allege "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Potter*, 863 P.2d at 819. "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* Thus, "[l]iability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (internal quotation marks omitted).

Simply put, under this legal framework, Urban's admonition to Plaintiff is—at best—a mere insult, indignity, or annoyance that does not give rise to a cause of action for intentional infliction of emotional distress. Plaintiff does not allege that Urban acted in a physically threatening manner or, for that matter, that Urban even raised his voice. Plaintiff also does not allege that Urban intended to cause or acted with reckless disregard at the probability of causing Plaintiff emotional distress. Finally, Plaintiff has cited no legal authority to support his intentional infliction of emotional distress claim. Thus, as currently alleged, Urban's words—that Plaintiff should "be careful, you're on my radar now"—do not represent conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Potter*, 863 P.2d at 819. Accordingly, the Court finds that Plaintiff's claims about Apple's internal training, scheduling, and discipline do not constitute intentional infliction of emotional distress. Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim as it pertains to Apple's internal training, scheduling, and discipline is GRANTED.

### 2. Racially-Discriminatory Comments

Next, Plaintiff alleges that various Apple employees at the California store directed racially-discriminatory comments at Plaintiff. One employee allegedly called Plaintiff "Oakland." SAC ¶ 36. Another employee allegedly "looked at Plaintiff and stated 'what are you part of some kind of new diversity program here or something.'" *Id.* ¶ 37. Finally, an employee allegedly said that Plaintiff looked like he was "part of a gang." *Id.* ¶ 38.

Together, Plaintiff alleges that these incidents resulted in Plaintiff suffering intentional infliction of emotional distress. Importantly, in this particular cause of action, Plaintiff does not

14

United States District Court
Northern District of California

allege that he was subject to racial discrimination under federal law (Title VII) or under state law (FEHA). As noted above, Defendants did not move to dismiss Plaintiff's racial discrimination causes of action under federal law (first cause of action) or under state law (second cause of action) as they pertain to incidents occurring at the California store.

With respect to Plaintiff's alleged infliction of emotional distress, Defendants contend that, as Plaintiff's employers, Defendants can not be held liable for the tort of intentional infliction of emotional distress of these unnamed Apple employees because "[a]n employer may be held liable for the torts of its employees under the doctrine of *respondeat superior* only if the tort was committed 'within the scope of the employment.'" Mot. at 10 (quoting *Lisa M. v. Henry Mayo Newhall Mem'l. Hosp.*, 907 P.2d 358, 360 (Cal. 1995)).

On this point, the California Supreme Court has held that, "the scope of employment has been interpreted broadly under the respondeat superior doctrine. For example, the fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude [employer] liability." *Farmers Ins. Gp. v. Cnty. of Santa Clara*, 906 P.2d 440, 448 (Cal. 1995) (internal quotation marks and alteration omitted). Hence, "where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer." *Id.* (internal quotation marks and citation omitted).

However, "an employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes." *Id.* at 449. "Thus, if the employee inflicts an injury out of personal malice, not engendered by the employment or acts out of personal malice unconnected with the employment, or if the misconduct is not an outgrowth of the employment, the employee is not acting within the scope of employment. Stated another way, if an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of

15

United States District Court
Northern District of California

respondeat superior." *Id.* (internal quotation marks and citations omitted).

This Court must apply the rule of the California Supreme Court, as a federal court "interpreting state law can not change or ignore the decisions of the highest state court because the highest state court is the final authority on state law." *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 545 (C.D. Cal. 2012) (internal quotation marks omitted).  In the instant case, the SAC demonstrates that the unidentified Apple employees at issue substantially deviated from the scope of their employment.  The Apple employee who called Plaintiff "Oakland" had asked Plaintiff to fix her personal Apple device.  SAC ¶ 36.  Similarly, the Apple employee who made the "diversity program" comment was in the process of "return[ing] an item [that] he [had] purchased using his Apple corporate discount." *Id.* ¶ 37.  Finally, the Apple employee who made the "gang" comment had asked Plaintiff to perform "a personal pickup." *Id.* ¶ 38.  In sum, the SAC does not suggest that these Apple employees were acting within the scope of their employment.  These employees sought assistance with their personal Apple devices and personal Apple purchases.

As noted above, in such circumstances, the California Supreme Court has held that an employee's torts which are "personal in nature" do not create employer liability.  *Farmers Ins. Gp.*, 906 P.2d at 449.  Indeed, in applying this rule, the California Court of Appeal has determined that "[i]f the main purpose of the injury-producing activity was the pursuit of the employee's personal ends, the employer is not liable." *Sunderland v. Lockheed Martin Aeronautical Sys. Support Co.*, 29 Cal. Rptr. 3d 665, 672 (Ct. App. 2005) (internal quotation marks omitted).  "If an employee's act is purely personal, it is not typical of or broadly incidental to the employer's enterprise." *Id.* (internal quotation marks omitted); *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222 (9th Cir. 2015) ("We must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently.") (internal quotation marks omitted).

Plaintiff challenges this finding by arguing that the unidentified Apple employees showed their Apple employee badges and were thus treated as Apple employees during their interactions with Plaintiff.  Opp'n at 8.  Such arguments, however, have been considered and rejected by the

16

United States District Court
Northern District of California

California Court of Appeal, in *Le Elder v. Rice*, 26 Cal. Rptr. 2d 749 (Ct. App. 1994), and in *Hoblitzell v. City of Ione*, 2 Cal. Rptr. 3d 8 (Ct. App. 2003).

In *Rice*, the California Court of Appeal determined that an employer was not liable for injuries arising from a car accident even though the employer had provided the employee the car for work purposes.  As the *Rice* court noted, the employee's "*purpose* was to take his children to school, a purely personal activity." 26 Cal. Rptr. 2d at 752.  "The existence or nonexistence of employer benefits is" therefore "not dispositive in determining vicarious liability."  *Id.*

Similarly, in *Hoblitzell*, another California Court of Appeal case, plaintiff worked as a contractor at a construction site.  While at the site during working hours, plaintiff was approached by defendants, one of whom was a law enforcement officer and the other of whom was a municipal building inspector.  2 Cal. Rptr. 3d at 10.  Defendants "identified themselves as building inspectors, and told the property owner that plaintiff had been performing the construction without permits and that the site should be shut down."  *Id.*  One defendant specifically stated, while examining a retaining wall, that he was a building inspector from the City of Ione.  *Id.* at 11.  Defendants, moreover, arrived and left in an unmarked City government vehicle.  Unbeknownst to plaintiff, defendants had not been sent to plaintiff's property to perform an inspection; defendants had been sent to harass plaintiff "at the request of a disgruntled former employee."  *Id.* at 10.

Plaintiff in *Hoblitzell* brought suit against the City of Ione and alleged that the City was liable for intentional infliction of emotional distress under the *respondeat superior* doctrine.  The California Court of Appeal rejected plaintiff's argument.  As the court explained, "it makes no difference that [a defendant] identified himself as a building inspector from Ione or used an unmarked City car: The purported misconduct did not arise from the employer's enterprise but arose for personal reasons."  *Id.* at 14.  "While the employee need not have intended to further the employer's interests, the employer will not be held liable for an assault or other intentional tort that did not have a causal nexus to the employee's work."  *Id.* (ellipses omitted).

*Rice* and *Hoblitzell* govern the instant case.  The unidentified Apple employees in the instant case who made racially discriminatory comments were on personal errands.  The SAC does

Case No. 16-CV-00289-LHK
ORDER GRANTING MOTION TO DISMISS

not allege that these employees were acting within the scope of their employment. As such, Defendants can not be held liable for intentional infliction of emotional distress under *respondeat superior*.

To summarize, neither category of allegations at issue—Plaintiff's issues with Defendants' training, scheduling, and discipline, and the racially-charged comments directed at Plaintiff—provides Plaintiff a basis to pursue a claim for intentional infliction of emotional distress. Defendants' motion to dismiss Plaintiff's cause of action for intentional infliction of emotional distress as to incidents occurring after January 19, 2014, is therefore GRANTED. Plaintiff, however, shall have leave to amend. It is possible that Plaintiff will be able to show that Defendants' conduct went beyond personnel management activity or that certain Apple employees were acting within the scope of their employment. Accordingly, amendment would not be futile. Defendants' motion to dismiss Plaintiff's cause of action for intentional infliction of emotional distress as to incidents occurring after January 19, 2014 is GRANTED without prejudice.

### E.  Seventh and Ninth Causes of Action: Hostile Work Environment and Harassment

Plaintiff's seventh cause of action states a claim for hostile work environment, and Plaintiff's ninth cause of action states a claim for harassment. SAC ¶¶ 61, 70. These causes of action suffer from the same defect: they do not state which statutes Defendants allegedly violated.

Federal Rule of Civil Procedure 8(a) states that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In interpreting this provision, the Ninth Circuit has held that "[a] complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008). Nevertheless, litigants must still "provide the defendant fair notice of the provision under which relief is sought." *Walker v. Beard*, 789 F.3d 1125, 1133 (9th Cir. 2015) (internal quotation marks omitted).

The SAC fails to provide such notice. As Defendants note, the SAC does not state whether Plaintiff is bringing his hostile work environment and harassment claims under (1) Title VII, (2) FEHA, (3) both statutes, or (4) neither statute. Plaintiff's opposition, for instance, appears to state

18

United States District Court
Northern District of California

that he is bringing these causes of action under the Ralph Civil Rights Act, even though the SAC does not mention the Ralph Civil Rights Act in either the seventh or ninth causes of action.  Opp'n at 10.

This ambiguity prevents Defendants from marshalling and asserting a viable defense.  It is unclear, for instance, whether Plaintiff's causes of action are time-barred (under Title VII) or whether Plaintiff's causes of action do not apply to conduct outside of California (under FEHA) or whether some other defense might apply.  As such, because Plaintiff has not provided fair notice of the provision under which relief is being sought, Defendants' motion to dismiss the seventh and ninth causes of action is GRANTED.[2]

Plaintiff, however, shall have leave to amend.  As the Ninth Circuit has observed, in many cases, "responsive pleadings may be necessary for a pro se plaintiff to clarify his legal theories." *Id.* (ellipses and alteration omitted).  Plaintiff could, via amendment, specify the statutory bases behind Plaintiff's hostile work environment and harassment causes of action.  Defendants' motion to dismiss is therefore GRANTED without prejudice.

Nevertheless, the Court notes that this is not the first time that Plaintiff has been given leave to amend.  Plaintiff has now filed five complaints against Defendants arising out of Defendants' alleged discrimination.  Plaintiff filed two complaints in *Dupree I*.  Plaintiff filed the original complaint in the instant action—*Dupree II*—on January 19, 2016.  At the April 27, 2016 initial case management conference, the Court granted Plaintiff's motion for leave to file the FAC. ECF No. 32.  Finally, on June 8, 2016, the Court granted Plaintiff's motion for leave to file the SAC.  ECF No. 38.  "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad."  *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (internal quotation marks omitted).  Although amendment here may not be futile, the Court recognizes the need to move this action forward in an expeditious

---

[2] Because the Court has granted Defendants' motion to dismiss for failure to provide fair notice, the Court need not address Defendants' argument that Plaintiff's seventh and ninth causes of action are duplicative.  Mot. at 11.  In any event, Plaintiff's causes of action do not appear entirely duplicative: Plaintiff's seventh cause of action refers to incidents in Florida and California, SAC ¶ 52, while Plaintiff's ninth cause of action appears to refer only to incidents in California.

Case No. 16-CV-00289-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

manner.  Accordingly, the Court warns Plaintiff that failure to correct the deficiencies in this Order and in Defendants' motion to dismiss shall result in a dismissal with prejudice.

## IV.    CONCLUSION

To conclude:

1.  As to the SAC's first and fifth causes of action, for violations of Title VII, Defendants' motion to dismiss Plaintiff's claims insofar as they arise from incidents occurring at the Millenia Mall, Australia, and Central Florida stores is GRANTED with prejudice.

2.  As to the SAC's second cause of action, for violation of FEHA, Defendants' motion to dismiss Plaintiff's claims insofar as they arise from incidents occurring at the Millenia Mall, Australia, and Central Florida stores is GRANTED with prejudice.

3.  As to the SAC's fourth cause of action, for violation of the Civil Rights Act of 1991, Defendants' motion to dismiss is GRANTED with prejudice.

4.  As to the SAC's sixth cause of action, for intentional infliction of emotional distress, Defendants' motion to dismiss is GRANTED with prejudice as to incidents occurring prior to January 19, 2014.  For incidents occurring after January 19, 2014, Defendants' motion to dismiss is GRANTED with leave to amend.

5.  As to the SAC's seventh and ninth causes of action, for hostile work environment and harassment, Defendants' motion to dismiss is GRANTED with leave to amend.

Defendants did not move to dismiss Plaintiff's third cause of action, for violation of 42 U.S.C. § 1981, and Plaintiff's eighth cause of action, for violation of the Ralph Civil Rights Act. In addition, Defendants did not move to dismiss Plaintiff's first and second causes of action, for violation of Title VII and FEHA, insofar as these causes of action arise from incidents occurring at the California store.  These causes of action thus survive dismissal.

Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty days of this Order.  Failure to meet this thirty-day deadline will result in a dismissal of this action with prejudice.  In addition, as noted above, failure to cure the deficiencies identified will result in a dismissal with prejudice of the deficient claims or

20

Case No. 16-CV-00289-LHK
ORDER GRANTING MOTION TO DISMISS

theories.  Plaintiffs may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated:  August 9, 2016

_____

LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

21